UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

LUCILLE VAN TASSELL,

                Plaintiff,

v.

CAROLYN COLVIN, Acting Commissioner
of Social Security,

                Defendant.

Civ. No. 15-5886 (KM)

OPINION

**KEVIN MCNULTY, U.S.D.J.:**

        Lucille Van Tassell brings this action pursuant to 42 U.S.C. § 405(g) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Van Tassell alleges that she is entitled to benefits because she is unable to engage in substantial gainful activity because of debilitating knee pain. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is AFFIRMED.

**I.    BACKGROUND**

        Van Tassell has been diagnosed with osteoarthritis in her left knee. From 2010-11, Van Tassell underwent a number of procedures to ameliorate the pain she feels in that knee. In May 2011, she underwent a surgical knee replacement. Van Tassell, who had been a home health aide, has not worked since. (R. 11-17)[1]

        Van Tassell applied for DIB on December 8, 2011. Her application was initially denied on February 13, 2012 and then on reconsideration on May 10, 2012. Following two hearings at which Van Tassell testified and was represented by counsel, ALJ Joel Friedman found that Van Tassell was not under a disability as defined in the Social Security Act. On May 26, 2015, the

---

[1]    Pages in the administrative record (ECF no. 6) are cited as "R. __."

Appeals Council denied her request for review, rendering the ALJ's decision the final decision of the Commissioner. Van Tassell now appeals that decision. (R. 1, 11)

## II. DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). She must also show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

### A. Standard of Review

This Court exercises a plenary review of all legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). This Court adheres to the ALJ's findings so long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, or it may remand the matter to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984). Outright reversal with an award of benefits is appropriate only when a fully developed administrative record substantial evidence which, on the whole, establishes that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221-222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see also Bantleon v. Comm'r of Soc. Sec.*, 2010 WL 2802266, at *13 (D.N.J. July 15, 2010). Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 Fed. Appx. 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "'explicitly' weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

### B. The Five Step Analysis

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920.

3

Review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulations.

**Step 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. (Those Part A criteria are purposely set at a high level, to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

### C. The ALJ's Decision

ALJ Friedman determined that Van Tassell had sufficient quarters of coverage to remain insured through March 31, 2016, and that the alleged disability onset date was December 3, 2010. The ALJ further determined that Van Tassell was not under a disability, as defined in the Social Security Act, at

any time from December 3, 2010 through May 14, 2014. (R. 11, 13) The ALJ's specific determinations may be summarized as follows.

### 1. Step One

The ALJ found that Van Tassell has not engaged in substantial gainful activity since December 3, 2010. (R 13)

### 2. Step Two

The ALJ identified Van Tassell's osteoarthritis and obesity as severe impairments. He also found that Van Tassell's condition following her knee replacement surgery was a severe impairment. (*Id.*)

### 3. Step Three

The ALJ determined that Van Tassell's impairments did not meet or medically equal the severity of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A § 1.02. (hereinafter, "Listing 1.02")[2] Specifically, ALJ Friedman found that Van Tassell failed to demonstrate that her knee rendered her unable to ambulate effectively or that she suffered from a gross anatomical deformity or joint space narrowing, bony deconstruction, or ankylosis.[3] He

---

[2]  Listing 1.02 provides:

*Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

   A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

OR

   B. Involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

[3]  "Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Listing 1.00B1. An applicant's inability to effectively ambulate is indicated by their inability to walk without the use

5

noted that no examining or treating physician determined that her ability to walk was extremely limited, and found her statements that she could only walk or stand for 10-15 minutes at a time not credible. (R.13, 16)

Before proceeding to step four, ALJ Friedman determined Van Tassell's RFC:

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functioning capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). She is able to lift and carry up to ten [pounds], able to stand and[/]or walk up to two hours and to sit at least six hours out of an eight-hour workday. She can engage in all postural activities on at least an occasional basis.[4]

(R. 14) The ALJ based that RFC finding on a thorough review of the evidence in the record.

ALJ Friedman noted that Van Tassell was 36 years old, had completed high school, and previously worked as a home health aide, childcare worker, maintenance worker, and cashier. He observed that her impairment stemmed from a left knee anterior cruciate ligament ("ACL") injury she suffered in 1993. She underwent surgery to fix that injury in September 2006, but reported little improvement. In 2010 and 2011, her condition apparently

---

of a device; walk around the block at a reasonable pace; use standard public transportation; carry out routine activities, like shopping and banking; or the inability to climb a few steps at a reasonable pace with the use of a single hand rail. Listing 1.00B2b(2). The fact that an applicant can walk around their home without assistance does not, in and of itself, mean they can effectively ambulate in a work setting. *Id.*

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). The full range of sedentary work requires that an individual "be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded." 1996 WL 374185.

6

worsened; she reported that it felt as if the bones of her knee were grinding against each other. She was prescribed Percocet, a painkiller, and Flexeril, a muscle relaxant. In May 2011, her entire left knee was replaced. (R. 15)

The ALJ considered treatment records prepared by Shailendra Hajela, M.D., a pain management specialist, following the knee replacement surgery. In September 2011, Van Tassell reported to Dr. Hajela that her knee pain was improving with physical therapy and she had been given the green light to go back to work. Dr. Hajela noted that she did not return to work because she was not permitted to lift anything beyond a moderate weight. Dr. Hajela observed that she walked with a normal gait and her knee had some swelling and restricted range of motion. Van Tassell was prescribed Vicodin and a non-steroidal anti-inflammatory drug ("NSAID"). In an October follow-up visit, Van Tassell reported constant and throbbing pain that worsened when she bent her knee, lay down, stood up, or walked. A month later, Van Tassell reported that the discomfort and stiffness in her left knee was improving. She continued taking a painkiller and a NSAID. She did not return to work, however, because she had been advised not to show up unless she was "100% with no disability." (R. 15, 321-29)

The ALJ also considered a pair of reports submitted in connection with Van Tassell's application for disability benefits. H. Mahmood Cheema, M.D., the orthopaedic surgeon who performed Van Tassell's knee replacement, opined that Van Tassell was able to lift and carry 10 pounds, stand or walk less than two hours a day, sit all day, and was limited in her ability to push or pull. In his accompanying report, Dr. Hajela agreed that Van Tassell was able to stand or walk for less than two hours a day and limited in her ability to carry, lift, push and pull, but thought that Van Tassell could only sit for less than 6 hours a day. (R. 16-17, 340-43, 369-71)

From January to April 2012, ALJ Friedman noted, Van Tassell continued to receive treatment for "sharp, burning, [and] constant" knee pain from Prashant Patel, M.D., another pain management specialist. During that

time, Van Tassell reported that her pain worsened when she stood, walked, or bent her knee and lessened when she would sit or lie down. Dr. Patel noted that Van Tassell's pain was managed by Percocet and a NSAID without side-effects, and that she denied any weakness, falling, or sensory deficits. The painkillers and anti-inflammatory drugs were continued. (R. 15-16, 359-64)

ALJ Friedman also reviewed the state medical consultants' February and May 2012 assessments. They thought Van Tassell could perform some light work, *i.e.*, could lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for four hours, sit (with normal breaks) about six hours; had a limited ability to push or pull with her left leg; and could occasionally engage in most postural activities (*e.g.*, climbing stairs, kneeling, crouching, balancing, etc.)[5] (R. 17, 64-65, 74-76)

At the ALJ's request, Justin Fernando, M.D., performed a consultative examination of Van Tassell in June 2013.[6] He reported that she seemed "generally capable of conducting her life[,] doing all the activities of daily life without any assistance." Dr. Fernando also observed that Van Tassell claimed "to be in pain nearly every minute of every day" and that "[s]tanding, sitting, and every movement causes a great deal of aggravation of the pain." Van Tassell related to him that she was taking Percocet and a muscle relaxant, although he noted that there was no evidence of dosage or frequency. Although Van Tassell did not permit him to test the affected knee's range of motion, he observed that she could squat halfway, had a normal gait, did not use a hand-

---

[5] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

[6] The examination was ordered because Van Tassell testified in May 2013 that she had no medical insurance and had not taken medication or seen a doctor since 2012. (R. 15)

8

held assistive device, and had driven herself to the appointment.[7] He noted that Van Tassell's left calf was a centimeter smaller than her right because that leg had been non-weight-bearing for a number of months. (R. 16, 407-17)

   ALJ Friedman also assessed Van Tassell's testimony at two hearings. At the initial May 2013 hearing, Van Tassell testified that she could not sit or stand for longer than 15 minutes without experiencing pain or numbness in the affected knee. She testified that, on an average day, she raked leaves, did laundry, and tried to stay busy to keep her mind off the pain. When the ALJ asked Van Tassell to explain why she could not do a "sitting down job or a very light job", she explained that she "can't perform to the best of my ability." The ALJ observed that Van Tassell stood up awkwardly after less than a 30 minutes. (R. 16, R. 41-43, 49)

   At the October 2013 hearing, the ALJ asked why Van Tassell thought she could not perform a "sitting down type of job." Van Tassell reiterated that she "can't work to the best of my ability" because, after 10-15 minutes, "her whole leg goes numb" and she has "to get up and walk around to loosen it back up and get the feeling back into it." She also testified that she did not have insurance and was taking only Aleve, which did not relieve her pain. (R. 28-32)

   On this record, the ALJ found that Van Tassell's symptoms were not inconsistent with the medically determinable impairments, but he did not fully credit her statements about the severity of her knee pain. In ALJ Friedman's words:

> It is noted that Dr. Cheema . . . assessed the claimant as able to lift/carry 10 pounds, stand/walk less than two hours, and sit with no limitation, but limited in

---

[7] In the RFC portion of the report, Dr. Fernando opined that Van Tassell could continuously lift up to 100 pounds, frequently carry up to 50 pounds, sit 7 hours, stand 6 hours, and walk 6 hours. As discussed below, the ALJ noted that the "RFC form doesn't always mat[c]h up with anything in the actual report" and did not credit this portion of Dr. Fernando's opinion. (R. 27)

> her ability to push or pull. Dr. Hajela . . . submitted an assessment finding that the claimant could and stand walk less than two hours and sit for less than six; however, his final treatment note, from December 9, 2011 (only six months post-surgery) reflects that she complained of 'some discomfort' in her left knee with some stiffness . . . . None of these findings are inconsistent with the ability to do a sedentary job and I afford the assessments for less than sedentary work little weight as they are unsupported by the doctor's own treatment records.
>
> The only evidence that is more recent is the opinion of the consultative examiner that she could do much more than sedentary. Although Dr. Cheema and Dr. Hajela said that she could stand and walk less than two hours, neither of them specify how much less, and even those opinions were rendered over two years ago (and only 8 months after the surgery). Given the unlimited ability to sit, a slight reduction in the total length of time she could stand and walk would not significantly erode the sedentary occupational base. Although DDS found a narrow range of light work, considering all the evidence as well as the claimant's obesity . . . I would limit the claimant to sedentary work.

#### 4. Step Four

The ALJ found that Van Tassell was unable to perform past relevant work as home health aide because it required her to lift patients from wheelchairs to beds. (R. 17)

#### 5. Step Five

Based on Rule 201.27 of the medical-vocational guidelines, 20 C.F.R. Pt. 404, Subpt. P, Appx. 2, and Van Tassell's age, education, work experience, the ALJ found that Van Tassell, within her RFC restrictions, was capable of performing other work that existed in significant numbers in the national economy.[8]

---

[8] Rule 201.27 directs a finding of "not disabled" for a younger individual (18-44) with an RFC for sedentary work that has at least a high school education and

10

D. **Analysis**

Van Tassell attacks the ALJ's decision on two fronts: the ALJ (1) inappropriately rejected Dr. Hajela's opinion that she could not perform sedentary work and (2) did not adequately consider her need for prescription painkillers.

1. **Rejection of Treating Physician's Opinion**

Van Tassell first faults the ALJ for rejecting for Dr. Hajela's January 2012 opinion that Van Tassell could stand or walk less than 2 hours and sit less than 6 hours. I disagree.

In general, the opinion of a medical professional who has treated the claimant is entitled to deference. 20 CFR § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s)..."); *see also Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("Treating physicians' reports should be accorded great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.") (internal quotation marks omitted)). Indeed, unless there is contradictory medical evidence in the record, an ALJ may not simply reject a treating physician's opinion. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008). But the opinion of a treating source is given "controlling weight" only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 CFR § 404.1527(c)(2). And in any a case, "[t]he law is clear... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011).

---

unskilled previous work experience. Van Tassell does not challenge the ALJ's step five finding here.

11

The ALJ's decision to give "little weight" to Dr. Hajela's opinion that Van Tassell could do less than sedentary work was adequately explained and supported by substantial evidence.

For starters, ALJ Friedman noted that Dr. Hajela's January 2012 opinion is inconsistent with his final treatment note—written only the month before—in which he reported that Van Tassell walked with a normal gait, the range of motion of her left knee was 0 to 110 degrees, and she complained only of some discomfort and stiffness. Dr. Hajela's opinion was also inconsistent with the opinion of another treating physician, Dr. Cheema, who thought that Van Tassell could sit without any limitation. While each physician thought that she could walk or stand less than two hours, the ALJ noted that those doctors' opinions were inconsistent with Dr. Fernando's most recent opinion that she could do much more than sedentary work. And in any event the ALJ correctly noted that no medical evidence corroborated Van Tassell's allegation that her pain was so severe that she could not sit, stand or walk for longer than 10-15 minutes.[9] (R. 16-17)

The RFC formulation, which clearly incorporates the limitations supported by the record as a whole, demonstrates that the ALJ did not reject Dr. Hajela's opinions out of hand. For example, ALJ Friedman noted that although Van Tassell's most recent examination with Dr. Fernando supported the conclusion that she could perform sedentary work, he found the suggestion that she could perform heavy work not credible. For similar reasons, the ALJ also discounted the opinions of the two state agency medical consultants who

---

9   Van Tassell asserts that ALJ's weighing of the evidence incorrectly assumed that her condition steadily improved following her knee replacement. By that logic, Van Tassell says, the ALJ should have at least found her disabled as of the alleged onset date, December 2010, through 2011. (Pl.'s Br. 13) But even if this were true, Van Tassell would not be entitled to DIB benefits. In September 2011, Van Tassell's condition had reportedly improved with physical therapy and she was told that she could go back to work so long as she did not lift more than moderate weights. (R. 328) That, however, would fall short of 12-month continuous duration requirement required under the Social Security Act. 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. § 404.1509.

concluded that Van Tassell was capable of a narrow range of light work. In other words, the determination that Van Tassell can perform a full range of sedentary work was in line with the lion's share of objective medical evidence and consistent with Van Tassell's own description of her daily living activities. (R. 16-17)

Because the ALJ gave due consideration to Dr. Hajela's opinion, the ALJ was entitled to, and did, find that it was outweighed by the other evidence in the record. Under the "substantial evidence" standard of review, I cannot reverse merely because there is some evidence that supports a conclusion contrary to that of the ALJ. *Jones,* 364 F.3d at 503 (describing the substantial evidence standard as "less than preponderance but more than a mere scintilla") (citation omitted)). Indeed, the process by its nature requires that the ALJ "weigh the medical evidence and make choices between conflicting medical evidence." *Williams v. Sullivan,* 970 F.2d 1178, 1187 (3d Cir.1992).

The ALJ faithfully discharged that duty here. ALJ Friedman reviewed the entirety of Van Tassell's records before weighing the various medical opinions in this case. His findings are therefore supported by substantial evidence.

### 2. Need for Pain Medication

Van Tassell also contends that the ALJ did not give due consideration to her need for painkillers. Specifically, she argues that the ALJ failed to acknowledge that the doctors' prescription of painkillers corroborated her assertions of chronic pain and functional limitations. Here, too, I disagree; this was one piece of evidence, but the ALJ was required to, and did, weigh all of the evidence regarding the claimant's pain and resulting limitations.

A claimant's subjective complaints merit careful consideration, but the ALJ is not required to accept them uncritically. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011) (citing 20 C.F.R. § 416.929). Rather, the ALJ is required to assess whether and to what degree such complaints are credible. *See* SSR 96-7p, 1996 WL 374186, at *4.

Such credibility determinations are reserved for the ALJ:

> [W]hile an ALJ must consider a claimant's subjective complaints, an ALJ has discretion to evaluate the credibility of a claimant and arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant. Subjective complaints cannot alone establish disability.

*Gantt v. Comm'r Soc. Sec.*, 205 Fed. Appx. 65, 67 (3d Cir. 2006) (internal quotations and citations omitted). See also 20 C.F.R. § 404.1529(c); *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 765 (3d Cir. 2009) (citing *Van Horn v. Schweiker*, 717 F. 2d 871, 873 (3d Cir. 1983)); *Davis v. Com'r of Soc. Sec.*, 240 Fed. Appx. 957, 960 (3d Cir. 2007).

The ALJ may reject subjective complaints, for example, if they are not credible in light of the other evidence of record. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). The ALJ is called upon to evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit his ability to perform basic work

activities. See 20 C.F.R. § 404.1529(c)(2). As to that issue, "[o]bjective medical evidence ... is a useful indicator." *Id.* The ALJ may also examine factors that precipitate or aggravate the symptoms, medications and treatments, and daily living activities. 20 C.F.R. § 1529(c)(3).

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P; see also 20 C.F.R. §§ 404.1529(b), 416.929(b). What is required overall is that the ALJ give the claimant's testimony "serious consideration," state her reasons for discounting it, and make "specific findings." *Rowan v. Barnhart*, 67 Fed. Appx. 725, 729 (3d Cir. 2003). Where that has been done, a reviewing court will defer to the ALJ's credibility determinations.

The ALJ here discharged that responsibility. His decision, supported by substantial evidence of record, represents a classic weighing of evidence to which the Court must defer. Because the relevant objective medical evidence has already been discussed, *supra*, only the following point need be made here.

It was not lost on the ALJ that Van Tassell had been prescribed medication to manage her knee pain. Citing to Van Tassel's medical history, treating physician records, the consultative examination report, and hearing testimony, the ALJ acknowledged that Van Tassell reportedly benefitted from taking prescription painkillers. (R. 15-17) In fact, it was within that context that ALJ Friedman observed the "inconsistency between what she told us [*i.e.*, that she had lost her medical insurance and *was not* taking prescription painkillers as of May and October 2013] and what she told the consultative examiner [*i.e.*, that she *was* taking prescription painkillers as of June 2013]." In conjunction with the objective medical evidence, the ALJ determined that Van Tassell's subjective allegations of pain were not fully credible. (R. 16)

For these reasons, the ALJ concluded that Van Tassell's symptoms were real and limited the range of work she could perform. Her complaints of debilitating pain so severe that she could not walk, stand, sit or stand for

longer than 10-15 minutes, however, he found to be exaggerated. Considering all the evidence together, including the prescription painkillers, the ALJ found that she could perform a full range of sedentary work.

The ALJ's weighing of evidence was careful, and he made specific findings to support his conclusions. Whether the Court would weigh the evidence the same way is irrelevant. Because the ALJ's findings and conclusions are supported by substantial evidence, I must sustain them.

### III. CONCLUSION

For the reasons stated above, the ALJ's decision is AFFIRMED.

Dated: December 1, 2016

                                                         **KEVIN MCNULTY**
                                                         **United States District Judge**